IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

ISAAC ROSARIO,                     )
                                   )
               Plaintiff,          )
                                   )
     v.                            )      No. 06 C 5108
                                   )
CITY OF CHICAGO, et al.,           )
                                   )
               Defendants.         )

                  MEMORANDUM OPINION AND ORDER

     After the January 4, 2008 pretrial conference that resulted in this Court's approval of the final pretrial order ("FPTO") jointly submitted by counsel for the parties,[1] each side has submitted motions in limine on the schedule set during that conference: Dkt. 52 on behalf of plaintiff Isaac Rosario ("Rosario") and Dkt. 50 on behalf of defendant James Witt ("Witt"). With each side having responded to the other's motion--via Dkt. 54 by Witt and Dkt. 53 by Rosario--the motions are ripe for decision.

     What has emerged in large part from the respective submissions is that Witt is attempting to muddy Rosario up as much as possible, too often with matters that are extraneous to Rosario's claim of excessive force (as for example by attempting to inject evidence that would be relevant only if Rosario were claiming the federal constitutional equivalent of false arrest,

---

     [1] To be more precise, this Court required revisions in that joint submission that were then made by counsel, so that the revised FPTO was entered on January 17 nunc pro tunc January 4.

as he is not), while for his part Rosario seeks to narrow the lawsuit's focus too much. This Court does not subscribe to either approach, and this memorandum opinion and order deals with both sides' motions.

Rosario's Motion

Rosario, who as already stated claims to have been the victim of a police beating, seeks to bar what he terms "irrelevant and prejudicial evidence." That label attacks a multitude of asserted sins, which will be dealt with seriatim.

Evidence of Alcohol on Rosario's Breath

Emergency room physician Dr. Richard Schmitt of West Suburban Hospital, where Rosario was taken after the encounter about which he complains, included in his emergency room chart "ETOH on breath." Witt raises the red herring that, as a treating physician, Dr. Schmitt need not have prepared a report under Fed. R. Civ. P. 26(a)(2)(B). True enough, although if Dr. Schmitt were to be asked to provide an opinion under Fed. R. Evid. ("Rule") 702 the relevant disclosure requirements would be those set out in Fed. R. Civ. P. 26(a)(2)(A) and (C). But here Dr. Schmitt would be presented as an occurrence witness rather than an opinion witness, so that the issue of admissibility or inadmissibility has to be decided on different grounds.

In that respect the cases consistently recognize (indeed, Witt's responsive memorandum acknowledges) that there must be

some showing of impaired perception before the potentially prejudicial evidence of alcohol consumption can get into the case (see, e.g., <u>Jarrett v. United States</u>, 822 F.2d 1438, 1446 (7th Cir. 1987)). And on that score Witt's own Mem. 3 acknowledges that Dr. Schmitt's examination confirmed that Rosario was "alert and oriented"--indeed, the doctor entered on Rosario's chart that he was "alert and oriented times three." Witt himself made no notation as to alcohol on Rosario's breath, no alcohol-related charges were brought against Rosario, and no alcohol testing was undertaken that night.

Nonetheless, in typical fashion, Witt's counsel attempt to conjure up a set of suppositions and wholly speculative--"what if?"--arguments to inject Dr. Schmitt's notation into the case. That is precisely the kind of thing that the rules as to relevance and probative value, and ultimately the balancing requirement of Rule 403, are designed to reject. Rosario's motion for exclusion is granted.

<u>Rosario's Other Arrests and Convictions</u>[2]

Rosario has an acknowledged record of prior convictions. When he testifies, felony convictions less than 10 years old will

---

[2] This same subject has been addressed in Witt's final Motion at 8-15, countered by Rosario's Response at 10-12. What is said in the following brief section of the text applies to that debate as well.

be fair game for his impeachment under Rule 609(a)(1) and (b).[3] But Rosario has made no false arrest claim--he does not challenge the existence of probable cause for his arrest, but rather bases his claim solely on the asserted physical violence that he suffered. Again Witt's counsel essay to shoehorn in irrelevant evidence--or even if there were marginal relevance and probative value, evidence that would be excluded under the balancing standards of Rule 403.

Nor will this Court entertain any end runs around that constraint. Instead it rules that Rule 403 can best be served by the parties' entry into a stipulated statement covering the convictions and sentences, so that the stipulation can be the subject of either or both sides' submissions during Rosario's direct or cross-examination testimony.

Miscellaneous "Hearsay" Documents

Because the parties' submissions make it abundantly clear that passing on Rosario's objections tendered under this rubric

---

[3] That does not of course extend to arrests or other contacts with the criminal justice system that did not produce felony convictions. In that regard Witt wishes to elaborate on the prior criminal charges by bringing in evidence of "an outstanding arrest warrant issued by DuPage County for his previous failure to appear in court on charges of driving under the influence of alcohol and obstructing justice" (Witt Mem. 2, citing Witt's deposition testimony). Both because Rule 609(a)(1) dictates that admissibility is "subject to Rule 403" and under the teaching of applicable caselaw, all that may be brought into evidence will be the nature of the charges of <u>conviction</u> and the sentences imposed.

cannot be evaluated without an examination of the exhibits themselves, and because this Court has not been furnished with the challenged exhibits, no piece-by-piece ruling can be made in this opinion. But given the focus of Rosario's claim on assertedly excessive force, the principles enunciated in such cases as <u>Palmquist v. Selvik</u>, 111 F.3d 1332 (7th Cir. 1997) would govern admissibility. Thus Witt's response, assuming its accuracy as to the nature of the exhibits it describes, seems correct as to:

> 1. Defendants' Ex. 24, described as an attendance sheet that shows Witt was the only patrol officer assigned to his beat car at the time of the encounter;
>
> 2. Defendants' Exs. 22 and 23, or at least the portions that reflect what backup forces arrived on the scene after the initial encounter between Rosario and Witt.

Both of those matters bear directly on the credibility of the parties' respective accounts, and those three exhibits are therefore admissible.

By contrast, the arrest reports will not be admitted into evidence. Witt himself will be testifying as to the events at issue, and no justification exists for a jury's being provided with the same evidence in duplicate. In addition, there is a meaningful difference in terms of jury deliberations between evidence delivered orally in the form of testimony and evidence

5

reduced to documentary form as a narrative of the same events. This would not, of course, preclude the potential introduction of such a report as a prior consistent statement if a claim of recent fabrication had to be countered.

As indicated at the outset of this section, if there are other exhibits at issue under this characterization they should be made available so that this Court can rule on them on an informed basis. That should of course be done promptly.

<u>Chicago Police Officers Theodorides, Rodriguez and Staunton</u>

This objection by Rosario relates to three officers whom Witt included on his "may call" rather than "will call" list in the FPTO, and as to whom Witt's discovery responses confirmed that they did not witness any physical interaction between Rosario and any member of the Chicago Police Department, nor did they hear Rosario make any statements, nor did they observe Rosario on the date of the event. Based on those responses, it seemed reasonable to Rosario's counsel not to include those officers among the people deposed (although Officer Theodorides had been noticed for a deposition before Witt's counsel provided an answer negating his having talked to or closely observed Rosario).

In response to Rosario's current motion, Witt's counsel now identifies matters to which those persons would assertedly be qualified to testify. Except for Officer Rodriguez, whose

6

testimony might be needed to establish a foundation for the "mugshots" of Rosario, the proffered reasons are really inconsistent with the witnesses' "may call" rather than 'will call" listing--they appear to be afterthought rationalizations, for if those reasons really existed as substantive justifications the witnesses would have been on the "will call" list. Accordingly Theodorides and Staunton may not testify, while Rodriguez' testimony as to the photographs will be permitted unless (as Witt's counsel has offered) Rosario is prepared to stipulate to the admission of the photographs and the time that they were taken.

Employment and Employment Records

Rosario advances no claim for lost wages as part of his purported damages, so that he seeks to exclude evidence about his employment. Witt's answer as to one such matter is that Atlas Testing, a temp agency, responded that it had no records as to Rosario's employment, though he and his girlfriend Michelle Muniz testified he was working there from 3 p.m. to about 10:30 p.m. on September 25 (the arrest at issue took place in the early morning of September 26).

In this area the parties' input is somewhat confusing. Here is what Rosario says at page 9 of his motion:

> The records Defendants seek to introduce consist of a single check from 2004 from Atlas Employment and a statement that no records could be located regarding Plaintiff at Atlas Testing.

Where short-term placement by a temp agency is involved, recordkeeping is understandably not as reliable as the type of regular employment that generates a Form W-2. Rosario's counsel goes on to state (id.):

> These hearsay exhibits and testimony are more prejudicial than probative and would spark a complicated contest on a collateral issue unrelated to the material issues of this civil rights trial. In the unlikely event this Court finds relevance in this evidence, Plaintiff would seek a voir dire of the foundation witnesses for these employment records to determine the reliability of the records, including whether a witness has any personal knowledge of Plaintiff's employment more than three years ago; what specific records, if any, are kept in the ordinary course of their businesses; maintenance of such records; any chain of custody evidence regarding the safe-keeping of these records and whether records for any similarly situated employees from that time period [sic].

That route would invite a substantial enlargement of the already-closed discovery process to deal with the issue, and this Court would be disinclined to embark on that path even though Rosario's concerns are understandable. But on the other side of the coin, Witt's counsel advances nothing but a totally speculative predicate for the admissibility of the evidence (Witt Mem. 11):

> The probative value of this 7-1/2 hour gap in Rosario's story is obvious. There was ample opportunity for him to consume alcohol, to get into a fight and to sustain the minor injuries subsequently observed by Dr. Schmitt, before he ever encountered Officer Witt.

That attenuated kind of speculation is unpersuasive as a predicate for admissibility of the questioned evidence, and on

8

balance Rule 403 plainly calls for its exclusion.

Finally in this category, Witt offers up the prospect of what is often pejoratively characterized as collateral impeachment. Those arguments are unpersuasive as well.

Cellular Phone Records

Here the parties do battle as to the reliability and significance of records relating to Rosario's cellphone during the September 25-26 period. Unfortunately counsel--familiar with the case from their intensive preparatory work, as this Court is not--have not made at all clear just what Witt is hoping to prove (or disprove) through the introduction of such records. Rosario asserts the usual arguments that the admission of such records would be of questionable probative value at most, but this Court is not in a position to evaluate that counterargument either. Hence no definitive ruling can be made on the motion without further input from the litigants--but rather than leaving the matter in limbo, this Court grants the motion without prejudice to Witt's reassertion of the proposed introduction into evidence in an appropriate form.

Next Rosario challenges the potential admissibility of exhibits that would provide title information as to two motor vehicles, one a Chevrolet Astro Van that he was driving when stopped by the police and the other a 1992 Ford Thunderbird that Rosario owned but that he says was not implicated in the matter

9

at issue. Witt has the better of the argument as to both vehicles.

As for the Chevrolet, Rosario's interrogatory answers as to damages included the impoundment and destruction of that vehicle. Unless Rosario were to withdraw that facet of his damage claim, evidence of his nonownership is clearly relevant and probative. And as for the Ford, Denise Lopez has testified that Rosario was driving such a vehicle when he dropped off her daughter. That certainly sounds as though there is a relevance link between the nonownership of the car and Rosario's claim (or, more accurately, Witt's defense). Accordingly this aspect of Rosario's in limine motions is denied.

Finally, Rosario seeks to keep out of the case evidence about his later incarceration, which Witt seeks to introduce--not as such but rather to show Rosario's physical condition at that time (relevant, as Witt has it, to Rosario's assertion of claimed damages from the incident at issue in this case). Because the incarceration itself poses clear Rule 403 problems, while the evidence as to the results of Rosario's medical examination at that time does not, his motion to exclude is granted--but on condition that an appropriate stipulation is entered into as to those results (without indicating where and under what circumstances the examination took place).

## Witt's Motions

For his part, Witt presents five motions in limine, all encompassed in his consolidated Dkt. 50.  Because his last motion has already been spoken to in the earlier discussion of Rosario's parallel motion, only the first four will be addressed hereafter.

First Witt seeks to bar Rosario "from presenting evidence or making arguments that suggest police officers invariably cover-up evidence of police misconduct or that they are bound by a 'code of silence.'"  This troublesome issue is posed again and again in Section 1983 actions charging misconduct by Chicago police officers--repetition that is quite understandable in light of the shameful lack of effective enforcement by the City, over the years, against the bad apples in the police department (a regrettable pattern that is well known to counsel for Section 1983 plaintiffs, to counsel for the City and to federal judges, but that the Section 404(b) concern about admitting propensity evidence tends to keep away from jury consideration.

But in this case Rosario does not seek to tar Witt with the asserted misdeeds of other officers, so that the hotly disputed "code of silence" type of proof is not at issue.  Instead Rosario claims that at least one other officer (unidentified because Rosario was assertedly struck from behind) participated with Witt in assertedly beating Rosario.  Surely Rosario can cross-examine Witt on the subject, and Rosario is also right in his other

11

arguments in opposition to the motion. Witt's motion in that respect is denied.

Witt's second motion relatedly seeks "to bar Rosario from presenting evidence or making arguments based on other lawsuits, citizens' complaints, news articles and employment or disciplinary proceedings involving Officer Witt or non-party police witnesses." As to Witt himself, that motion cuts closer to the bone in terms of reconciling the Rule 404(b) general prohibition against propensity evidence with the doctrines that support the admissibility of similar acts evidence as spelled out in that Rule and the caselaw. As always, this Court will traverse the knife edge between those competing considerations in the terms prescribed by Huddleston v. United States, 485 U.S. 681 (1988) and the later caselaw applying those principles. Here the Rule-404(b)-specified grounds of motive and intent appear to support the admissibility of (1) testimony regarding Witt's confrontations with individuals Rosario identifies as his Witness Nos. 9 and 10 and (2) perhaps evidence generated in the recent and currently pending lawsuit against Witt and other police officers in Rodriguez v. Cervantes, No. 07 C 2481.[4]

In summary, Witt's motion is granted as to nonparty police witnesses (a subject not challenged by Rosario's responsive

---

[4] In the latter respect, the posture of that case can best be reviewed shortly before the anticipated trial date in this action.

memorandum) but is denied as to Witt himself. This subject will be revisited at trial in terms of defining the nature and scope of the permitted testimony.

Witt's penultimate motion seeks to bar evidence as to Witt's potential indemnification by the City of Chicago for compensatory damages that may be awarded to Rosario. Although the caselaw consistently supports such exclusion (and this Court regularly applies it), some discussion of the competing considerations is warranted.

On the one hand, Witt's Motion at 5 makes the legitimate point that informing the jury of such indemnification might lead to the imposition of a damage award based on knowledge of the City's deep pocket. But on the other side of the coin, there is the danger that a jury--knowing or surmising the modest income level and assets of police officers generally--could lowball a damages award out of sympathy for the miscreant officer. And because there is no eavesdropping on jury deliberations, one can only speculate as to whether either of those alternatives actually operates.[5]

---

[5] Note the contrast with the more frequently addressed situation in which juries get no information about a tortfeasor's insurance coverage. In that situation any notion that jurors are ignorant on that subject is sheer fiction, for everyone knows about the universality of (say) liability insurance in the automobile accident situation. Indeed, states such as Illinois have laws mandating such insurance coverage, essentially assuring universal awareness on that score. By contrast, indemnification such as that provided by the City is not a part of common

13

To earn the benefit of this Court's ruling excluding evidence as to indemnification, Witt and his counsel must be circumspect in avoiding any statement or implication as to Witt's financial situation. If any such statement or implication that might create the flipside risk identified here were to take place, this Court would not hesitate to instruct the jury as a matter of law that Witt is entitled to indemnification as to compensatory but not as to punitive damages. Thus Witt and his counsel have total control over the enforcement of this Court's ruling on the subject.

Finally, Witt seeks "to bar Rosario from testifying that his current condition is caused in fact from his September 26, 2005 injuries." That subject is such a classic question for jury resolution that any effort to cut it off at the pass as a matter of law is suspect from the beginning.

Instead both sides will have ample opportunity to present evidence on the subject for jury consideration. Witt may well prove more persuasive by offering the evidence described in his Motion at 6-7, but the jury could instead credit Rosario's version as described in his Response at 7-10. In all events, Witt's motion in that respect is denied.

## Conclusion

For the reasons that have been set out in this memorandum

---

experience.

opinion and order, each party's motions are granted in part and denied in part. And to the extent indicated earlier, some of the matters covered here may be revisited on proper showings before trial.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 1, 2008